IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EL-SAYED DAHMAN**<br>3375 Beechcliff Drive<br>Alexandria, VA 22306,<br><br>   Plaintiff,<br>v.<br><br>**THE EMBASSY OF THE STATE OF QATAR**<br>2255 M Street, N.W.<br>Washington, DC 20037,<br><br>   and<br><br>**THE STATE OF QATAR,**<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.:17-cv-02628<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, El-Sayed Dahman, by and through undersigned counsel, hereby files this action against The Embassy of the State of Qatar (hereinafter "the Embassy") and The State of Qatar (hereinafter "Qatar") and hereby alleges as follows:

## NATURE OF THE CASE

1. This suit is brought against the Embassy and Qatar challenging their unlawful employment actions and for their violation of federal law, including the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and for their violation of the District of Columbia Human Rights Act ("hereinafter DCHRA"), as amended, D.C. Code § 2-1401 *et seq*. Plaintiff seeks relief pursuant to the ADEA, including, but not limited to, 29 U.S.C. § 626(b-c), and the DCHRA, including, but not limited to, D.C. Code § 2-1402.11, for harms caused to Plaintiff by Defendants' unlawful discrimination on the basis of his age, when Plaintiff was terminated for exceeding 64 years of age. Plaintiff requests as relief: reinstatement, or in the alternative, front pay (and future pecuniary losses); back pay and back benefits; unpaid overtime compensation; liquidated damages; compensatory damages; punitive damages; attorney fees;

and such other relief as the Court deems just and appropriate, in order to fully remedy Defendants' unlawful acts;

## PARTIES

2.     Plaintiff, El-Sayed Dahman, is a resident of Virginia, and was so at all times relevant to this Complaint. He currently resides at 3375 Beechcliff Drive, Alexandria, VA 22306. Plaintiff was employed for more than 20 years by the Embassy of the State of Qatar in Washington, D.C as the Director of the Accounting Department, also known as Chief Accountant. He currently is 70 years old;

3.     Defendant, the Embassy of the State of Qatar, is an office, instrumentality, arm, agency or representative of Qatar in the United States and the District of Columbia. The Embassy has substantial contact with the United States and with the District of Columbia, and the Embassy engaged in and conducts commercial activity in the United States and District of Columbia. The Embassy's address is 2255 M Street, N.W., Washington, DC 20037;

4.     Defendant The State of Qatar is a foreign state which has substantial contact with the United States and with the District of Columbia. Defendant Qatar engages in and conducts commercial activity in the United States and District of Columbia;

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this Complaint because it presents questions of federal law pursuant to 28 U.S.C. § 1331;

6.     Specifically, this Court has jurisdiction over this Complaint pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*;

7.     This Court may exercise its supplemental jurisdiction under 28 U.S.C. § 1367 for the claims arising from the District of Columbia Human Rights Act, as amended, D.C. Code § 2-1401 *et seq.*;

8.     This Court has jurisdiction over the Embassy of the State of Qatar and The State of Qatar based on the commercial activity exception to the Foreign Sovereign Immunities Act (hereinafter

"FSIA"), 28 U.S.C. § 1605(a)(2). *See* generally, 28 U.S.C. §§ 1602-1611. Further, this Court has subject matter jurisdiction over this matter for Plaintiff was not employed as a government civil servant employee of Defendant Qatar and Plaintiff's actions were neither governmental, nor diplomatic or political in nature. Mr. Dahman was hired as a third country local employee;

9. This Court is the proper venue pursuant to 28 U.S.C. § 1391(f) and 29 U.S.C. § 626(c). Plaintiff's place of work was located in Washington, D.C., and his supervisor was located in Washington, D.C. Defendant The Embassy is located in Washington, D.C. Defendants' discriminatory acts complained of took place in Washington, D.C.;

10. Plaintiff's age discrimination claims are timely per 29 U.S.C. § 626(d), which allows Plaintiff to file a civil action in this Court 60 days or more after filing a discrimination charge in the Equal Employment Opportunity Commission (hereinafter "EEOC"). Plaintiff was terminated by the Embassy on January 5, 2016, and he timely filed a Charge of Discrimination with the EEOC on February 24, 2016. The EEOC took no action on the matter and issued a Notice of Right to Sue to Plaintiff on September 20, 2017; and he timely brings this civil action against Defendants within 90 days of his receipt of this Notice;

## FACTS

11. Born in February 1947, Plaintiff El-Sayed Dahman, an Egyptian citizen, is a 70-year-old man in excellent health with a specialty in accounting. He is a member of a protected group by virtue of his age (over 40);

12. Mr. Dahman was employed at the Embassy for more than 20 years. Initially employed on May 18, 1995, as an accountant, Mr. Dahman shortly thereafter in January 1, 1996, was elevated to the position of Director of the Accounting Department, also known as Chief Accountant. He successfully served six Ambassadors of the State of Qatar to the United States, including His Excellency Mohamed Jiham Al-Kawari, Qatari Ambassador to the United States and Mr. Dahman's immediate supervisor, when he was terminated on January 5, 2016;

13.  In his 20 years as accountant and later the Director of the Accounting Department, also known as Chief Accountant at the Embassy, Mr. Dahman received numerous letters from Embassy officials commending his loyalty and the high quality of his work;

14.  Mr. Dahman's job duties as the Embassy's Director of the Accounting Department included, but were not limited to, the following: preparing annual Embassy budgets and reports; compliance with external annual audits; supervising and monitoring the work of the accounting team; evaluating accounting team performance and training; verifying local employee timesheets; bank account reconciliation; and paying local United States vendors invoices. As the Chief Accountant reviewing the Embassy's transactions in the United States, Mr. Dahman oversaw Defendants' commercial activity in the United States, monitoring commercial transactions in the United States. At no time did he engage in diplomatic or political work;

15.  On May 18, 1995, Mr. Dahman was first hired by the Embassy as an accountant, and the Embassy and Mr. Dahman executed an employment contract on that date. This employment contract was titled "Local Work Contract" and referred to Mr. Dahman as a "Local Employee" throughout. Mr. Dahman, as an Egyptian citizen, was hired as a local employee to fill a staffing need and was not a civil servant of The State of Qatar at any time during his employment;

16.  On January 1, 1996, Mr. Dahman was hired to fill the position of Director of the Accounting Department, and the Embassy and Mr. Dahman entered into a second contract titled "Local Employment Contract." As a local employee and not a civil servant, Mr. Dahman was not entitled to Qatari civil service benefits or to any other benefits, rights, or remedies provided by the laws of The State of Qatar;

17.  The term of the second Local Employment Contract was set at one year, but the contract renewed automatically. This Local Employment Contract also states that the contract would expire when the local employee, Mr. Dahman, reached the age of 64 years;

18.  Mr. Dahman worked for 20 years, 7 months at the Embassy, until it terminated him on January 5, 2016 due to his age;

19.     Mr. Dahman received a termination letter dated November 17, 2015, which was signed by Mohamed Jiham Al-Kawari, Qatari Ambassador to the United States. This termination letter informed Mr. Dahman that he was being terminated due to the fact that he was reaching his "retirement age" on January 5, 2016. On January 5, 2016, Mr. Dahman was 68 years, 10 months old;

20.     Mr. Dahman was solely terminated due to his age. There was no other reason for his termination articulated in the termination letter signed by the Qatari Ambassador, and he was not terminated for cause;

21.     The termination letter from Defendant Embassy's Qatari Ambassador refers to a July 5, 2015, letter from the Director of Human Resources for Defendant Qatar's Ministry of Foreign Affairs to the Ambassador, which states that Mr. Dahman's end of service is approaching, due to him being over the age of 64. Similarly, a memorandum from the Embassy's Administrative Officer, dated November 17, 2015, which concerns the calculation of Mr. Dahman's severance package, refers to the July 5, 2015 letter as "regarding the end of service for employees reaching 64 years of age";

22.     While Mr. Dahman was summarily terminated on January 5, 2016, for exceeding 64 years of age, other employees at the Embassy have been allowed and continue to work past the age of 64, including, but not limited to, upon information and belief, Waild Ramadan (Accountant- Embassy) whose "end of service" date was 7/15/2012 and who is greater than 64 years of age, Mohamed Shoura (Accountant- Defense Department) who is greater than 64 years of age, Mahmoud Sabri (Director of Academic Affairs- Security Department) who is greater than 64 years of age, Mohamed Hussain (Public Relations- Medical Department) who is greater than 64 years of age, Omnia El Sherbini (Administrative officer- Embassy) whose "end of service" date was January 5, 2016 and who is greater than 64 years of age, and Jesus Bernabe (Driver- Embassy) who is greater than 64 years of age. As of this filing, upon information and belief, Mr. Shoura, Mr. Sabri, Mr. Hussain, Ms. El Sherbini, and Mr. Bernabe continued to work at the Embassy despite

being over the age of 64. Further, Mr. Ramadan, an accountant in Mr. Dahman's department who worked under the same contract terms as Mr. Dahman, worked at the Embassy until he voluntarily retired at the age of 82. Finally, although Mr. Dahman worked past the age of 64, as he was 68 years, 10 months old, he was terminated on January 5, 2016, based solely on his age;

23. The Embassy routinely has local employees work past the age of 64 and not retire, but it asserted in correspondence in 2015 that Mr. Dahman would be terminated because his age exceeded 64 years, engaging in a course of conduct which is arbitrary and disparate toward Mr. Dahman. In contrast with the treatment of other Embassy employees, Mr. Dahman was terminated by the Embassy merely for being over the age of 64. The Embassy asserted no other reasons for its termination of Mr. Dahman in the Ambassador's termination letter dated November 17, 2015, its letter from the Director of Human Resources dated July 5, 2015, or its Memorandum from the Administrative Officer dated November 17, 2015. The Embassy's sole reason for its termination of Mr. Dahman was that he exceeded 64 years of age;

24. The Ambassador's termination letter dated November 17, 2015, praised Mr. Dahman and expressed their appreciation for his dedication, sincerity, and trust for over 20 years of service;

25. While summarily dismissing Mr. Dahman after over 20 years of loyal service to the Embassy and Qatar, the Embassy and Qatar willfully subjected Mr. Dahman to disrespectful and harassing treatment at the time of his dismissal. Upon information and belief, the Embassy and Qatar honored virtually all of the long-term employees with an exit social event which was willfully declined Mr. Dahman to disparage him. Further, Defendants offered Mr. Dahman a depleted severance package that only included 60 out of the 155 vacation days that he had accrued while their own correspondence dated November 19, 2015, from the Administrative Officer, concedes his accrual of the 155 vacation days. Upon information and belief, this differed from the Embassy's treatment of other employees, who received their full vacation days in their severance packages. Finally, the termination took place in the backdrop of Mr. Dahman's residence suffering a total loss fire, of which Defendants were apprised;

26. The Embassy and Qatar, by and through Mr. Mohamed Al-Attiyah, Second Secretary of the Embassy at the time, called Mr. Dahman on or about December 23, 2015, and tried to force Mr. Dahman to agree to change his official termination date from January 5, 2016, to December 31, 2015. Moreover, Defendants failed to pay Mr. Dahman's health insurance premium for January 2016, which caused him to incur losses;

27. Mr. Dahman has suffered damages as a result of his unlawful termination by the Embassy, which was solely due to his age. For instance, Mr. Dahman has been without income since January 5, 2016, and he had no plans to retire when he was summarily terminated by the Embassy. All efforts hence to gain employment have been thwarted by the willful manner in which Mr. Dahman was terminated. Mr. Dahman's termination from the Embassy has resulted in him being precluded from obtaining employment at other embassies, i.e., in his field of expertise, as his termination from the Embassy effectively blacklists him on the job market. As a consequence of Defendants' actions, Mr. Dahman's reputation and career have been severely damaged by the Embassy's unlawful termination, and he has suffered emotional distress, including embarrassment, humiliation, and indignity due to the Embassy's unlawful conduct. Finally, Mr. Dahman's severance payment and benefits were also negatively impacted by Defendants' unlawful conduct and premature termination;

28. Mr. Dahman's damages due to Defendants' unlawful conduct and actions include *inter alia* a loss of income and benefits; loss of employment opportunities; loss of earning capacity, future benefits, and future severance payment; future pecuniary and nonpecuniary losses; discharge from employment; damage to Plaintiff's reputation and career; emotional pain and suffering; embarrassment, humiliation, and indignity; inconvenience, mental anguish, and loss of enjoyment of life; and withholding of his rightfully due wages and deprivation of entitlements;

29. The Embassy's action to terminate Mr. Dahman solely due to his age was a willful action. The Embassy knew or showed reckless disregard for the fact that age discrimination is

prohibited by U.S. laws, which protect local employees who work at the Embassy, like Mr. Dahman, as opposed to Qatari civil service employees, who have no such protection;

30. The Embassy committed an intentional unlawful act (termination due to Mr. Dahman's age) and exhibited reckless or callous indifference to the rights of Mr. Dahman;

## CAUSES OF ACTION

### COUNT I
### DISCRIMINATION BASED ON AGE
### IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 et seq.

31. Plaintiff adopts and incorporates herein by reference, as if specifically set forth herein, the averments of paragraphs 1 through 30 of this Complaint;

32. Based upon the facts described in the preceding paragraphs, Defendants unlawfully discriminated against Plaintiff El-Sayed Dahman on the basis of his age (born in February 1947) in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq;

33. Plaintiff suffered from the discriminatory practices and policies of Defendants as averred above;

34. Defendants' violation of the ADEA was willful;

35. As a direct and proximate result of Defendants' discriminatory conduct, practices, and/or policies, Plaintiff has suffered damages, including, but not limited to, loss of income and benefits; loss of employment opportunities; loss of earning capacity, future benefits, and future severance payment; future pecuniary and nonpecuniary losses; discharge from employment; damage to Plaintiff's reputation and career; emotional pain and suffering; embarrassment, humiliation, and indignity; inconvenience, mental anguish, and loss of enjoyment of life; and withholding of his rightfully due wages and deprivation of entitlements;

**COUNT II**
**DISCRIMINATION BASED ON AGE**
**IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT,**
**D.C. Code § 2-1401 *et seq.***

36. Plaintiff adopts and incorporates herein by reference, as if specifically set forth herein, the averments of paragraphs 1 through 35 of this Complaint;

37. Based upon the facts described in the preceding paragraphs, Defendants unlawfully discriminated against Plaintiff El-Sayed Dahman on the basis of his age (born in February 1947) in violation of the District of Columbia Human Rights Act, as amended, D.C. Code § 2-1401 *et seq*;

38. Plaintiff suffered from the discriminatory practices and policies of Defendants as averred above;

39. Defendants' violated the DCHRA willfully; and

40. As a direct and proximate result of Defendants' discriminatory conduct, practices, and/or policies, Plaintiff has suffered damages, including, but not limited to, loss of income and benefits; loss of employment opportunities; loss of earning capacity, future benefits, and future severance payment; future pecuniary and nonpecuniary losses; discharge from employment; damage to Plaintiff's reputation and career; emotional pain and suffering; embarrassment, humiliation, and indignity; inconvenience, mental anguish, and loss of enjoyment of life; and withholding of his rightfully due wages and deprivation of entitlements.

**RELIEF REQUESTED**

41. Plaintiff requests any and all relief provided by the discrimination laws of the United States and the District of Columbia, including, but not limited to, the following:

a. Reinstatement, or in the alternative, front pay and future pecuniary losses under the ADEA and DCHRA;

b. Back pay and back benefits under the ADEA and DCHRA;

c. Maximum liquidated damages under the ADEA;

d. Compensatory damages under the DCHRA for, *inter alia,* Plaintiff's loss of income and benefits; loss of employment opportunities; loss of earning capacity, future benefits, and future severance payment; future pecuniary and nonpecuniary losses; discharge from employment; damage to Plaintiff's reputation and career; emotional pain and suffering; embarrassment, humiliation, and indignity; inconvenience, mental anguish, and loss of enjoyment of life; withholding of his rightfully due wages and deprivation of entitlements; and other pecuniary and nonpecuniary losses in an amount to be determined at trial;

e. Punitive damages under the DCHRA;

f. The reasonable attorney fees at prevailing market rates, costs, and expenses of this action; and

g. Such other relief as the Court deems just and appropriate.

## JURY TRIAL

42. Plaintiff demands a trial by jury on all issues so triable.

SYLVIA J. ROLINSKI, ESQ.
D.C. Bar No.430573
Rolinski Law Group, LLC
14915 River Road
Potomac, MD 20854
Office: +1-301-987-0202, ext. 1
Fax: +1-301-263-7100
SJR@Rolinski.com
Attorneys for Plaintiff El-Sayed Dahman

DANIEL K. GEBHARDT, ESQ.
D.C. Bar No. 975703
Solomon Law Firm, PLLC
1025 Connecticut Avenue, N.W., Suite 1000
Washington, DC 20036
Office: +1-866-833-3529
Fax: +1-202-688-1896
dgebhardt@fedemploylaw.com

December 7, 2017                 Attorneys for Plaintiff El-Sayed Dahman