UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EL-SAYED DAHMAN,

    Plaintiff,

        v.

EMBASSY OF THE STATE OF QATAR

    and

THE STATE OF QATAR,

    Defendants.

Civil Action No. 17-2628 (JEB)

## MEMORANDUM OPINION

Plaintiff El-Sayed Dahman brought this age-discrimination suit against both his former employer, the Embassy of Qatar, and the State of Qatar, alleging that they violated the Age Discrimination in Employment Act and the District of Columbia Human Rights Act in terminating him from his position as an accountant. Defendants never appeared, and Dahman successfully moved for a default judgment on liability. Finally arriving on the scene, Defendants now move on several grounds both to vacate the default and to dismiss the case. Agreeing that the suit does not belong here, the Court will grant the Motion.

**I. Background**

As the Court has already treated in detail the facts of this dispute, see Dahman v. Embassy of Qatar, 2018 WL 3597660, at *1 (D.D.C. July 26, 2018), a brief recap suffices here. Seventy-year-old Dahman began working as an accountant for the Embassy of Qatar here in Washington in 1995. He became Director of the Accounting Department the next year. Id. His employment was governed by a contract that provided that it would expire when he reached the

1

age of 64 in February 2011.  See ECF No. 16 (Motion for Default Judgment), Exh. 8 (Plaintiff's Employment Contract), ¶ 7.1.  That date came and went, but Plaintiff kept working.  Several years later, the Embassy finally terminated him on January 5, 2016.  See Dahman, 2018 WL 3597660, at *1.

On December 12, 2017, having received a right-to-sue notice from the Equal Employment Opportunity Commission, Dahman brought this action against the Embassy and the State of Qatar (which, for ease of reference, the Court will refer to jointly as "Qatar") for age discrimination in his termination in violation of the ADEA and the DCHRA.  Id.  He served both Defendants in February 2018 but received a response from neither.  Id.  As a result, he obtained the entry of default in April 2018.  See ECF Nos. 13–14.  He then moved the following month for default judgment.  See ECF No. 16.  Defendants did not challenge that either, and the Court issued a 20-page Opinion on July 26, 2018, addressing a number of issues, including the Foreign Sovereign Immunities Act.  See Dahman, 2018 WL 3597660.  It found Defendants liable and set a hearing to determine the proper amount of damages.  Id. at *1.

Three days before the damages hearing set for September 13, 2018, Defendants finally appeared, see ECF Nos. 19–20, and the Court permitted them to file a motion to vacate the liability judgment.  See Minute Order of Sept. 13, 2018.  Defendants now so move on three grounds: lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 60(b)(4), *forum non conveniens* pursuant to Rule 60(b)(6), and for several additional reasons having to do with immunity for the State of Qatar and whether Dahman exhausted EEOC remedies.  See ECF No. 22 (Motion to Vacate Default).  Because the Court will vacate the default judgment on laibility and dismiss on *forum non conveniens* grounds, it need not address the other two bases for the Motion.

## II. Legal Standard

Rule 60(b) provides "[g]rounds for [r]elief from a [f]inal [j]udgment, [o]rder, or [p]roceeding." It enumerates in the first five subsections specific reasons that "[o]n motion and just terms, the court may relieve a party" from final judgment. See Fed. R. Civ. P. 60(b)(1)–(5). Finally, it stipulates that the court may also do so for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Under this provision, the Court has "broad" discretion to grant relief from judgment under "extraordinary circumstances." Salazar v. Dist. of Columbia, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (internal citations and quotations omitted).

## III. Analysis

While courts must typically assure themselves of their own jurisdiction before proceeding to any other determination, see Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998), *forum non conveniens* presents a threshold issue, and the Court may "choose among threshold grounds for denying audience to a case on the merits," dismissing on *forum non conveniens* grounds "when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 425, 431–32, 436 (2007) (citations omitted); see also Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). The Court will do so here, opting to resolve *forum non conveniens* first as a clearly dispositive issue and avoiding the need to look elsewhere.

Plaintiff rejoins that the Court must begin with jurisdiction because *forum non conveniens* can only be considered first where jurisdiction "is difficult to determine, and . . . *forum non conveniens* considerations weigh heavily in favor of dismissal." ECF No. 23 (Opp.) at 13 (quoting Sinochem, 549 U.S. at 436). As the foregoing discussion made clear, however, the Court's discretion is not so limited. In any event, even if Plaintiff's precise formulation were

correct, the course here would remain appropriate. That is because, as the following analysis will demonstrate, *forum non conveniens* considerations do weigh heavily in favor of dismissal, while the jurisdictional question — namely, whether an exception to the Foreign Sovereign Immunities Act applies here to allow the suit to proceed — is a much closer question. See Dahman, 2018 WL 3597660, at *4–8 (discussing FSIA issue without input from Defendants).

In asserting *forum non conveniens* here, Qatar argues that the forum-selection clause in Dahman's contract — namely, an arbitration clause — necessitates dismissal. See Atlantic Marine Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."); see also D & S Consulting v. Kingdom of Saudi Arabia, 322 F. Supp. 3d 45, 49–50 (D.D.C. 2018) (similar). Although this case is in a somewhat different procedural posture, as the Court has already issued a judgment on liability, Dahman does not argue that Rule 60(b)(6)'s application should alter in any way the Court's ordinary *forum non conveniens* analysis or that Defendants should be otherwise penalized for their delay.

The Court, accordingly, will proceed through the two-step examination the Supreme Court has enumerated for a *forum non conveniens* motion based on a forum-selection clause. See Atlantic Marine, 571 U.S. at 63 (describing how *forum non conveniens* "calculus changes . . . when the parties' contract contains a valid forum-selection clause"); see also D&S Consulting, 322 F. Supp. 3d at 49 (describing the two-step analysis). First, the Court must determine the validity of the forum-selection clause. See Atlantic Marine, 571 U.S. at 62–63 & n.5. If the clause is valid, it should be "given controlling weight in all but the most exceptional cases." Id. at 63 (citation omitted). The second step, therefore, is to determine whether public-interest

4

factors "overwhelmingly disfavor" dismissal. See D & S Consulting, 322 F. Supp. 3d at 49–50 (quoting Atlantic Marine, 571 U.S. at 67). The Court will address each step in turn.

A. Validity

Dahman's employment contract is a seven-page document that comprehensively covers the terms of his work for the Embassy. It includes provisions for, *inter alia*, his appointment, medical insurance, schedule, leave, obligations, and termination and associated payments. In addition, it includes an arbitration clause that reads as follows:

> All disputes arising under this Local Employment Contract shall first be brought before the Administrative Officer of the Embassy. The Employee shall have the right to appeal any decision by the Administrative Officer to the Ambassador at the Embassy of the State of Qatar . . . The decision of the Ambassador shall be final. After exhausting the foregoing dispute resolution procedure, any remaining dispute, controversy or claim arising out of or relating to this Local Employment Contract, or the breach, termination or invalidity thereof, shall be settled exclusively by arbitration . . . The number of arbitrators shall be three; the place of arbitration shall be Doha, Qatar.

Employment Contract, ¶ 9.1 (emphasis added). In addition, a separate clause stipulates that the "Local Employment Contract, and any related dispute, shall be governed by the laws of the State of Qatar." Id., ¶ 9.6. On its face, then, the contract requires that Dahman's claims be submitted to arbitration in Qatar under the laws of that country. Dahman, however, contests such an interpretation.

He raises two arguments to undermine the validity of the arbitration clause for the purpose of this dispute: first, when he was terminated, the contract had already expired, and the clause thus has no effect; and second, the clause is not applicable to his particular claims here. As to the first, Plaintiff maintains that the "entire discussion of the arbitration clause is inapplicable" because no contract was in force at the time he was terminated. See Opp. at 15.

5

He elaborates that the contract "by its own terms necessarily expired when [Dahman] reached the age of 64" in February 2011.  Id. (citation omitted); see also Employment Contract, ¶ 7.1 (providing that contract "shall renew automatically, and continue from month-to-month unless terminated in accordance with" procedures in contract, "provided, however, that this [contract] shall expire when [Dahman] reaches the age of 64 years").  Because "the contract expired," Plaintiff concludes, for the "several years" he worked after turning 64, "local law necessarily governed the parties' relationship."  Opp. at 16.

While appealing at first glance, this position does not accurately reflect the law.  Rather, "general principles of contract law teach . . . that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive."  Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery and Tobacco Workers' Intern. Union of Am., 28 F.3d 347, 355–56 (3d Cir. 1994).  Other circuits, state courts, and treatises are all in accord with this approach.  See, e.g., id. at 355 & n.13 (citing 2 Corbin on Contracts § 504 at 717 (1963); 2 Williston on Contracts § 6.42 at 452 (4th ed. Lord ed. 1990)); George v. LeBeau, 455 F.3d 92, 94–95 (2d Cir. 2006) (affirming that "mere continuation of employment" may be sufficient to "imply renewal of an agreement to arbitrate in an expired employment contract" and explaining that "a new contract having the same terms and conditions as the original one" is implied when an "employee continues to render the same service" upon "the expiration of a contract") (internal quotation marks and citation omitted); Ringle v. Bruton, 120 Nev. 82, 85–86 (2004) ("[W]hen an employee continues to work after his contract of employment expires, it is presumed that all the terms of

the employment contract continue to govern the conduct of the employer and the employee until the parties properly amend or terminate the contract or until the employee ceases working for the employer."); Am. Jur. 2d, Contracts § 576 (2018) ("Where an agreement expires by its terms and, without more, the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old and ordinarily, the existence of such a contract is determined by the 'objective' test, that is, whether a reasonable person would think the parties intended to make such a new binding agreement."); cf. Draim v. Virtual Geosatellite Holdings, Inc, 522 F.3d 452, 455 (D.C. Cir. 2008) ("Although the written employment contract expired before [plaintiff's] resignation from Virtual Geo, the magistrate judge found that the parties continued to operate under the understanding articulated in the contract and neither party disputes this finding on appeal."); Vogel v. WMATA, 533 F.2d 13, 15–16 (D.C. Cir. 1976) ("It is widely accepted that where parties enter into a contract of employment for a term of one year, and then continue the relationship without a new agreement, they are presumed to have renewed the original contract for another year.").

      The rationale for the rule, which applies with full force here, is that "when parties to an ongoing, voluntary, contractual relationship . . . behave as before upon the lapse of the contract, barring contrary indications, each party may generally reasonably expect that the lapsed agreement's terms remain the ones by which the other party will abide." Luden's, 28 F.3d at 356. Plaintiff does not cite any contrary law or explain why this well-settled principle of contract should not apply here. Nor does he argue that any party "clearly [or] manifestly indicate[d]" that it "no longer wishe[d] . . . to be bound" by the contract. Id. at 355–56. The Court concludes, accordingly, that the terms of the contract — including the arbitration clause — continued to bind the parties beyond the enumerated expiration date and until Dahman's termination in 2016.

Plaintiff's second contention — namely, that the arbitration clause, by its terms, does not cover his statutory age-discrimination claims — fares no better. He makes a cluster of related points: 1) the arbitration clause does not apply to his "non-contractual based statutory claims"; 2) it cannot encompass this "dispute . . . precisely governed by U.S. law" because the parties did not "contemplat[e]" "Defendants' violation of U.S. and D.C. statutes"; and 3) it is drafted too narrowly to encompass his discriminatory-termination claim. See Opp. at 16–20.

The first two contentions are easily dispatched because Dahman points to no authority suggesting arbitration clauses do not cover statutory claims as a general matter or that claims arising under U.S. law cannot be submitted to foreign arbitration. Nor does he cite any support for the proposition that the parties here did not intend to arbitrate the violation of these or other statutes. In fact, case law makes clear that arbitration clauses can encompass non-contractual claims, including statutory ones. See Crescent Intern., Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944–45 (3d Cir. 1988) (noting that "pleading alternate non-contractual theories" is insufficient to avoid forum-selection clause); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988) (reasoning clause "equally applicable" to tort causes of action); Zaitzeff v. Peregrine Financial Grp., Inc., 2008 WL 11408422, at *5 (C.D. Cal. June 23, 2008) (applying clause to statutory cause of action and discussing similar decisions); cf. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement."); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (rejecting contention that an "arbitration clause must specifically mention the statute giving rise to the claims that a party . . . seeks to arbitrate" and rejecting "presumption against arbitration of statutory claims").

It is equally clear that disputes presenting questions of U.S. law need not necessarily be decided in U.S. courts. See Omron Healthcare, Inc. v. Maclaren Exports Ltd., 28 F.3d 600, 603–04 (7th Cir. 1994). To the extent Dahman is instead arguing that because the contract provides for the application of Qatari law, see Employment Contract, ¶ 9.6, these particular U.S. law claims may not in fact be vindicated in Qatar, that is an equitable argument more appropriately weighed at the second step of the *forum non conveniens* analysis. That is, it does not go to whether the clause is applicable, but rather to whether the public interest disfavors dismissal. The Court thus treats it in Section III.B, *infra*.

The final point — that the arbitration clause is drafted too narrowly to encompass the instant claims — requires a bit more ink. Plaintiff contends that, because the clause provides for arbitration of a dispute "arising under" the contract rather than "arising out of or relating to" it, the clause is comparatively cabined. See Opp. at 15–16 (citing Dowley v. Dewey Ballantine, LLP, 2006 WL 1102768, at *7 (D.D.C. Apr. 26, 2006)). He also maintains that this dispute is outside the ambit of the contract, since it "is not over the terms of his termination *per se* . . . but rather the discrimination he experienced by Defendants during his employment based on his age." Id. at 17.

As an initial matter, the Court notes that the arbitration clause in fact contains both "arising under" language and "arising out of or relating to" language. See Employment Contract, ¶ 9.1. Specifically, it provides that "[a]ll disputes arising under this [contract] shall first be brought before the Administrative Officer of the Embassy." Id. Once the intra-Embassy decisional process is exhausted, then "any remaining dispute, controversy or claim arising out of or relating to this [contract], or the breach, termination, or invalidity thereof, shall be settled exclusively by arbitration." Id. To the extent, therefore, that Dahman hangs his hat on the

9

argument that the clause contains only — in his view, comparatively narrow — "arising under" language, that emphasis is puzzling, since the provision contains both phrases. If Plaintiff is making an argument that the initial "arising under" language limits the subsequent "arising out of and relating to" provision, the Court is not persuaded. The addition of the "relating to" language reflects an intent for a potentially <u>broader</u> range of claims to be brought before the arbitrator than could be brought in the intra-Embassy process; otherwise, the language is superfluous. Likewise, while the contract provides that "[a]ll <u>disputes</u>" must go through the exhaustion procedure, "any remaining <u>dispute</u>, <u>controversy</u> <u>or</u> <u>claim</u>" — a broader class of issues — goes to arbitration. <u>Id.</u> (emphases added).

To give these textual additions meaning, the Court must conclude that any controversy "arising out of <u>or</u> relating to" the contract must be submitted to arbitration. Far from being a narrow mandate, the clause in Dahman's contract therefore has expansive reach. <u>See</u> <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 397–98 (1967) (noting that clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement" is "broad"). This is especially true where "there is a strong federal policy in favor of arbitration and '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" <u>Dowley</u>, 2006 WL 1102768, at *2 (quoting <u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1, 24–25 (1983)). Dahman's termination claim plainly meets the standard of arising out of or relating to the contract.

Finally, his insistence that his claim is not about his termination, but rather about discrimination, is at best a stretch. The whole thrust of his suit is that Qatar terminated him for improper reasons. The ending of his employment is unquestionably related to his employment and the contract that governed it.

B.  Public-Interest Factors

The Court turns next to the second inquiry: whether Dahman, as the party opposing enforcement of a valid forum-selection clause, has "[borne] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." Atlantic Marine, 571 U.S. at 67. Plaintiff's arguments misapprehend how this burden is allocated and urge the Court to apply the test laid out in Azima v. RAK Investment Authority, 305 F. Supp. 3d 149, 175 (D.D.C. 2018), where "the burden [was] on Defendants to prove the foreign forum . . . adequate" and dismissal appropriate. See Opp. at 24. That test is inappropriate here, where, unlike in Azima, the Court has found that a valid forum-selection clause applies to govern the parties' dispute. The Supreme Court has made clear that, in that instance, the burden shifts, so that Dahman must "show[] why the court should not transfer the case to the forum to which the parties agreed." Atlantic Marine, 571 U.S. at 62–64. He contends here that enforcement of the clause would "contravene[] the strong public policy of this forum in applying the ADEA and DCHRA" and that his age-discrimination claims "would not be [v]indicated in . . . Qatar." Opp. at 25, 27, 28. As these arguments are closely related, the Court will address them together.

As an initial matter, Plaintiff has not carried his burden to show that his claims would not be addressed adequately in Qatar. He asserts without citation that "Defendants' discrimination . . . inside [D.C.] would not be held to the same high standard of social justice in Qatar as it would here in Washington." Opp. at 26. This falls short of an actual showing that he could not bring and receive relief for a substantially similar claim in the foreign forum. Plaintiff elaborates that "[f]orcing the parties . . . to arbitrate [the] age discrimination claim in Qatar . . . would directly contravene the ADEA's goal of deterring the setting of arbitrary age limits and the DCHRA's strong public policy of ending age discrimination in [D.C.] and the legislative

intent of the statute." Opp. at 26. As he has never shown that these claims could not be vindicated in Qatar, the conclusion that dismissal would contravene the purposes of ADEA and DCHRA does not follow.

As Qatar may potentially consider the age-discrimination claim, Dahman has not shown that the public interest would "overwhelmingly disfavor" dismissal. Cf. Gilmer, 500 U.S. at 29, 35 (affirming ADEA claims may be submitted to arbitration); Cap Gemini Ernst & Young U.S. LLC v. Nackel, 2002 WL 31626703, at *2 (S.D.N.Y. Nov. 21, 2002), vacated on other grounds, 346 F.3d 360 (2d Cir. 2003) ("[T]he federal policy in favor of arbitration . . . would override any contrary expression in a state employment discrimination statute."). Nor does his claim that U.S. courts have an interest in interpreting and applying U.S. law to a dispute arising here, see Opp. at 26, carry the day. The arbitration of claims arising under American law does go to foreign panels, see Omron Healthcare, 28 F.3d at 603–04, such that there is plainly no categorical interest in U.S. courts' interpreting and applying U.S. law. Nor is it unusual to submit an age-discrimination claim to arbitration. See, e.g., 14 Penn Plaza, LLC v. Pyett, 556 U.S. 247, 257–58 (2009) (recognizing that ADEA claims may be submitted to arbitration); Desiderio v. Nat'l Ass'n of Securities Dealers, Inc., 191 F.3d 198, 203–04 (2d Cir. 1999) (same); Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 149 (1st Cir. 1998) (same). Taking all his arguments together, then, Dahman has not shown that public-interest considerations require the Court to override the arbitration clause.

**IV.    Conclusion**

For these reasons, the Court will grant Defendants' Motion for Vacatur and to dismiss the case. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  January 25, 2019